**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| CELESTINA LAMAI,<br><br>　　　Plaintiff,<br><br>v.<br><br>CENTRAL IOWA HOSPITAL CORPORATION d/b/a IOWA METHODIST MEDICAL CENTER,<br><br>　　　Defendant(s). | Case No. 4:23-cv-00105<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW** |

**COMES NOW**, Defendant, Central Iowa Hospital Corporation d/b/a Iowa Methodist Medical Center ("Methodist" or "Defendant"), pursuant to Federal Rule of Civil Procedure 50, provides this brief in support of its Motion for Judgment as a Matter of Law, respectfully state as follows:

**I.    LEGAL STANDARD.**

A motion for a for judgment as a matter of law may be granted if the issue has been fully heard during a jury trial and "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50. In making this determination the evidence is reviewed in the light most favorable to the nonmoving party. *Hauser v. Equifax, Inc.*, 602 F.2d 811, 814 (8th Cir. 1979). "Granting judgment as a matter of law is appropriate 'when "a party has been fully heard on an

issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." ' " *Roberson v. AFC Enters., Inc.*, 602 F.3d 931, 933 (8th Cir. 2010) (quoting *Miller v. City of Springfield,* 146 F.3d 612, 614 (8th Cir.1998)).

## II. PLAINTIFF HAS NOT SHOWN DEFENDANT TOOK AN ADVERSE ACTION AGAINST HER.

Plaintiff has not presented sufficient evidence from which a reasonable juror could conclude that Methodist took any adverse action against her. All three of Plaintiff's claims require her to prove Defendant took an adverse employment action against her. See *Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 964 (8th Cir. 2023); *Schaffhauser v. UPS, Inc.*, 794 F.3d 899, 902 (8th Cir. 2015); *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 147–48 (Iowa 2013). Plaintiff alleged Methodist took two adverse actions against her: (1) moving her from the colorectal procedure to cystoscopy procedures on April 1, 2022, (2) constructively discharging her by moving her to the cystoscopy procedures.

*A. Plaintiff Has Not Suffered an Adverse Action Under Title VII.*

To establish a prima facie case of race discrimination in violation of Title VII, Plaintiff had to prove she: "(1) is a member of a protected class; (2) was meeting…[Defendant's] legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of her protected class." *Jackman v. Fifth Jud. Dist. Dept. of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (citation omitted).

Even under the Supreme Court's relaxed *Muldrow* standard, Plaintiff has not established she suffered "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024). Plaintiff testified that her job duties remained the same when she was moved from the colorectal procedure to the cystoscopy procedure. *See* Def's Ex. E. Plaintiff testified that she did not experience any change in her compensation, job title, or job duties. She merely changed from one assignment within her job duties, assisting as a surgical technician on a colorectal surgery, to another assignment within her job duties, assisting as a surgical technician on a cystoscopy. Tammi Hentges and Laurie Johnson likewise testified that a surgical technician's job duties are the same regardless as to whether they are assigned to a colorectal or cystoscopy procedure.

As set forth in Methodist's trial brief, the Eighth Circuit has found that *Muldrow* did not eliminate the adverse action requirement of Title VII and Section 1981. *Martinez-Medina v. Rollins*, 144 F.4th 1091, 1096 (8th Cir. 2025). In *Martinez-Medina*, the Eighth Circuit found there was no adverse employment action under *Muldrow* where an employee was assigned work typically performed by higher ranking employees, her supervisor "took credit for her work," and "her 2018 performance review was delayed." *Id.* This is because there was no evidence the plaintiff "suffered termination, a reduction in pay or benefits, or some other discriminatory effect due to her employer's actions." *Id.*; *accord Arnold v. United Airlines, Inc.*, 142 F.4th 460, 471 (7th Cir. 2025) (finding no adverse

action under *Muldrow* for placement on a performance improvement plan because there was no change to "[h]er compensation, benefits, vacation times, and working hours"). The same is true here: Plaintiff has not shown that performing the cystoscopy procedure to which she was reassigned constituted a change in her employment conditions. In fact, she has conceded she regularly performed cystoscopy procedures in her role as a surgical tech and that performing cystoscopies was within her job duties and job description. *See* Def.'s Ex. A; Def's Ex. E.

Nor has Plaintiff established she was constructively discharged to support she experienced an adverse employment action. A constructive discharge occurs under Title VII and Section 1981 "when an employer deliberately renders the employee's working conditions intolerable and thus forces [her] to quit [her] job." *Jackson v. Arkansas Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1026 (8th Cir. 2001) (quotation omitted) (alterations in original). Plaintiff must show that Methodist "intended to force [her] to quit, or at least have reasonably foreseen [her] resignation as a consequence of the unlawful working conditions it created." *Id.* This requires "something more" than an otherwise actionable hostile work environment. *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004). The Eighth Circuit has routinely rejected plaintiffs' attempts to assert failing hostile work environment claims under a theory of constructive discharge. *See, e.g., Rickard v. Swedish Match N. Am., Inc.*, 773 F.3d 181, 186 (8th Cir. 2014); *Wilkie v. Dep't of Health & Hum. Servs.*, 638 F.3d 944, 954 (8th Cir. 2011); *O'Brien v. Dep't of Agriculture*, 532

4

F.3d 805, 811 (8th Cir. 2008). Plaintiff must also show that "a reasonable person, from an objective viewpoint, would find the working conditions intolerable" and, to be considered reasonable, "an employee must give her employer a reasonable opportunity to correct the problem." *Jackson*, 272 F.3d at 1026.

The facts are clear that, on one occasion, Plaintiff was switched surgical assignments following a patient's race-based staffing request that had never before happened in the OR and was contrary to Methodist's policy. *See Clay v. Lafarge North America*, 985 F.Supp.2d 1009, 1032–33 (S.D. Iowa 2013) ("[A] single unfavorable job assignment that … falls within [the employee's] job description is insufficient to establish a hostile work environment."). As a matter of law, this single incident does not rise to the high level of making Plaintiff's working conditions intolerable.

Even if the Court accepts as true Plaintiff's testimony that her co-workers stared at her or whispered about her, this too does not rise to the level of making her working conditions intolerable. *See Wilson v. City of Des Moines*, 442 F.3d 637, 644–45 (8th Cir. 2006) (explaining that "being shunned or ostracized by coworkers is not an adverse employment action" under Title VII or the Iowa Civil Rights Act).

Plaintiff complained to Larie Barker about the April 1 incident late on April 4, 2022. She testified she announced she was resigning employment on April 12. Plaintiff worked only four days from when she complained to when she resigned. Plaintiff therefore failed to give Methodist a reasonable opportunity to work out the problem, which bars her

constructive discharge claim. "An employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged." *Lopez v. Whirlpool Corp.*, 989 F.3d 656, 664 (8th Cir. 2021).

Construing every fact in the light most favorable to Plaintiff, Plaintiff has not shown she was constructively discharged or that she experienced any other adverse employment action. Judgment as a matter of law is proper.

### B.  Plaintiff Has Not Suffered a Materially Adverse Action Under Section 1981.

Even if the Court concludes that Plaintiff has produced sufficient evidence to support "some harm" under *Muldrow* for her Title VII claim, her Section 1981 claim still fails. Although federal courts typically evaluate race discrimination claims under Title VII and § 1981 using a similar analysis, there is no indication that the Supreme Court would eliminate the materiality requirement previously enumerated under Section 1981. *Yang*, 79 F.4th at 964; *Schaffhauser*, 794 F.3d at 902. The *Muldrow* case was limited to a discriminatory transfer claim under Title VII and did not extend to Section 1981 claims. *See generally Muldrow*, 601 U.S. 346. Significantly, the *Muldrow* Court reached its conclusion based on the statutory text of Title VII in 42 U.S.C. § 2000e-2. *Id.* at 354. There is no indication the Supreme Court would apply the same analysis to a Section 1981 claim which contains different statutory text.

As stated above, Plaintiff was not demoted, disciplined, terminated, or otherwise had any term or privilege of her employment detrimentally affected. Her pay, benefits,

job duties, hours, and other terms of employment remained identical and she continued to perform routine surgical technician procedures as normal. There is no support in law or in fact that Plaintiff suffered a materially adverse employment action from changing from one routine surgical assignment to another.

Accordingly, Plaintiff has failed to establish her Section 1981 claim as a matter of law and the Court should enter judgment in Defendant's favor.

### C. Plaintiff Has Not Suffered a Materially Adverse Action Under the ICRA.

Even if the Court found Plaintiff established an adverse employment action under *Muldrow*, she cannot establish a materially adverse employment action under the Iowa Civil Rights Act ("ICRA"). To prevail on her ICRA claim, Plaintiff must show: (1) she was a member of a protected class, (2) she was qualified to perform as a surgical tech, (3) Defendant took an adverse employment action against her, and (4) circumstances permit an inference that the adverse employment action occurred because of Plaintiff's membership in a protected class. *See Jones*, 836 N.W.2d at 147–48. However, Plaintiff has not been able to show that Defendant took an adverse employment action against her.

Under the ICRA, an adverse employment action must be "material," or one that "that detrimentally affects the terms, conditions, or privileges of employment. Changes in duties or working conditions that cause no materially significant disadvantage to the employees are not adverse employment actions." *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 587 (Iowa 2017) (quoting *Channon v. United Parcel Serv., Inc.*, 629

N.W.2d 835, 862 (2001)). The Iowa Supreme Court has not addressed *Muldrow* and has not overruled the materiality requirement under the ICRA.

Iowa courts typically only take "guidance" from federal courts in interpreting the Iowa Civil Rights Act regarding provisions the Iowa Supreme Court has "not previously interpreted." *See Godfrey v. State*, 962 N.W.2d 84, 107 (Iowa 2021) (citations omitted). Here, the Iowa Supreme Court has already interpreted the ICRA to include a materiality requirement. See, e.g., *Farmland Foods, Inc. v. Dubuque Hum. Rts. Comm'n*, 672 N.W.2d 733, 742–43 (Iowa 2003) ("Like the other circumstances, these events did not constitute substantial evidence of a materially adverse employment action, but instead constituted a minor inconvenience. . . . Moreover, there was no evidence Taylor lost money or benefits or that he would be unable to transfer back to his job at a later time. None of the actions cited by Taylor caused any material employment disadvantage."). Because there is no indication the Iowa Supreme Court would revisit its ruling following *Muldrow*, this Court is bound to follow existing Iowa law.

As stated above, Plaintiff was not demoted, disciplined, terminated, or otherwise had any term or privilege of her employment detrimentally affected. Her pay, benefits, job duties, hours, and other terms of employment remained identical and she continued to perform routine surgical technician procedures as normal. There is no support in law or in fact that Plaintiff suffered a materially adverse employment action from changing from one routine surgical assignment to another.

Nor do these facts establish Plaintiff was constructively discharged from employment. "Constructive discharge exists when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Haskenhoff*, 897 N.W.2d at 591 (quoting *Van Meter Indus. v. Mason City Human Rights Comm'n*, 675 N.W.2d 503, 511 (Iowa 2004). An employee must show that their working conditions were unusually aggravated or amounted to a continuous pattern creating intolerable working conditions—"[t]rivial *or isolated acts* of the employer are not sufficient to support a constructive discharge claim." *Id.* (quoting *Van Meter Indus.*, 675 N.W.2d at 511 (emphasis added)).

For the same reason her Title VII and Section 1981 constructive discharge claim fails, so too does Plaintiff's constructive discharge claim under the ICRA. The evidence indisputably establishes Hollie Martinsen's decision to switch Plaintiff's surgical assignments was an isolated incident amongst the thousands of surgeries that occur each year at Methodist. Plaintiff has presented no evidence that Ms. Martinsen or anyone else at Methodist acted with the intent of making her working conditions so intolerable such that she was forced to involuntarily resign. Rather, the evidence establishes Plaintiff's co-worker Kimberly hugged her following the incident, Paige Green apologized to Plaintiff for the incident, and Plaintiff's co-workers generally continued to support her following the April 1 incident.

As such, Plaintiff has not shown sufficient evidence for a reasonable jury to find that Defendant took any materially adverse action against her; therefore, judgment as a matter of law in Defendant's favor on Plaintiff's ICRA claim is warranted.

### III.  PLAINTIF HAS FAILED TO ESTABLISH HER SECTION 1981 CLAIM.

Section 1981 provides that all persons within the United States have the same rights "to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "The purpose of 42 U.S.C. § 1981 is to prohibit discrimination in the 'performance, modification and termination of contracts' and to protect 'the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.' " *Williams v. Lindenwood Univ.*, 288 F.3d 349, 355 (8th Cir. 2002) (quoting 42 U.S.C. § 1981(b)). "To establish a *prima facie* claim of racial discrimination under 42 U.S.C. § 1981, the plaintiff must show that (1) [s]he is a member of a racial minority, (2) the defendant intended to discriminate against h[er] on the basis of race, and (3) the discrimination concerned an area enumerated by the statute." *Id.*

Moreover, "[w]hile § 1981 prohibits racial discrimination in all phases and incidents of a contractual relationship, the statute does not provide a general cause of action for race discrimination'"—"[a]ny claim brought under § 1981 ... must initially identify an impaired contractual relationship under which the plaintiff has rights." *Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 962 (8th Cir. 2023) (quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009)) (third alteration in original).

Plaintiff has put forth no evidence of any "impaired contractual relationship." Plaintiff testified she was a surgical tech for a staffing agency and the staffing agency assigned her to work at Methodist until June 18. Although Plaintiff terminated her assignment early, Methodist paid out the remainder of her contract. Plaintiff has not shown she was denied the enjoyment of all benefits, privileges, terms and conditions of any contractual relationship between herself and Methodist because Methodist paid her the remainder of her contract and did not terminate her.

Methodist is therefore entitled to judgment as a matter of law on Plaintiff's Section 1981 claim.

## IV.  PLAINTIFF HAS FAILED TO ESTABLISH EVIDENCE SUPPORTING A CLAIM FOR PUNITIVE DAMAGES.

Plaintiff has failed to show she is entitled to punitive damages in this case. Punitive damages may only be awarded under Title VII "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C.A. § 1981a. Punitive damages under Section 1981 follow the same standard as Title VII. *See Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 526 (8th Cir. 2019).

Plaintiff has put forth no evidence establishing Methodist acted with malice or reckless indifference to her federally protected rights. Rather, the facts establish that immediately after Plaintiff complained of the April 1 incident, Paige Green investigated, Ms. Green apologized to Plaintiff, and Ms. Green and Larie Barker issued a Level One

Verbal warning to Hollie Martinsen. At best, the facts establish that Hollie Martinsen was negligent in failing to follow Methodist's diversity policy when dealing with a race-based patient request. Plaintiff further conceded in her deposition and at trial that there was nothing more Methodist could have done to rectify the error in this case. The facts established by Plaintiff are insufficient to warrant punitive damages as a matter of law and judgment as a matter of law on Plaintiff's claim for punitive damages is appropriate.

The Eighth Circuit set aside punitive damages even where the evidence showed that the defendant willfully discriminated and the company "failed to meaningfully investigate" the employee's complaints. *See Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 637 (8th Cir. 1998). The Eighth Circuit found that even this type of evidence was in "stark contrast" to the type of evidence that will support a punitive damage award—"§ 1981a requires a showing of *more* than intentional discrimination to recover punitive damages." *Id.* (emphasis added). By contrast, cases that support punitive damages submission are those involving repetition of "highly offensive names" and physically assaulting employees. *See id.* By contrast, the facts of this case are even less culpable than those at issue in *Browning*—this was an isolated incident that Defendant swiftly responded to, apologized to Plaintiff, paid Plaintiff for the remainder of her contract, and disciplined the decisionmaker, Ms. Martinsen. There is not set of facts under which a reasonable juror could find Defendant's conduct rises to the high bar of submission of punitive damages.

WHEREFORE, Defendant Central Iowa Hospital Corporation, respectfully requests the Court, for the reasons set forth herein, grant the above-captioned Motion for Directed Verdict, enter an Order dismissing Plaintiff's claim in its entirety and taxing costs to Plaintiff. Defendants also request such further relief as may be just and equitable under the circumstances.

*/s/ Dana Hempy*
Frank Harty, AT0003356
Dana W. Hempy, AT0014934
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1300
Des Moines, IA 50309
Telephone: 515-645-5528
Facsimile: 515-283-8045
Email: fharty@nyemaster.com
        dhempy@nyemaster.com
**ATTORNEYS FOR DEFENDANT**

```
```

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on January 28, 2026 I electronically filed the foregoing with the Clerk of Court using the EDMS which will send notification of such filing to:

Melissa Hasso
Emily Wilson
Sherinian & Hasso Law Firm
111 East Grand, Ste. 212
Des Moines, IA 50309
Email:  mhasso@sherinianlaw.com
        ewilson@sherinianlaw.com

                                      */s/ Mari Seei*